[Sac. No. 4717. In Bank.—August 21, 1933.]

JOHN MORRIS, Respondent, v. R. C. COLE et al., Appellants.

Charles L. Gilmore for Appellants.

Rowan Hardin and Paul R. Hutchinson for Respondent.

THOMPSON, J.—Judgment was rendered in favor of plaintiff that he recover from defendants $15,000, the purchase price of certain mining property, paid by plaintiff to defendants as the result of fraudulent representations made to him by them. A writ of attachment was issued upon the filing of the complaint and thereafter levied. The defendants made a motion to discharge the writ, which motion was denied. The appeal is from the judgment, from the order denying the motion to discharge the attachment, and there is a purported appeal from the order denying defendants' motion for a new trial. Inasmuch as the last-mentioned order is not appealable, an order dismissing the appeal therefrom will be found at the end of this opinion.

In so far as the appeal from the order refusing to discharge the attachment is concerned, it apparently presents nothing but an academic question. The record dis-

closes that subsequent to the rendition of judgment a writ of execution was levied upon the attached property and it was sold thereunder. It does not appear from appellants' brief or otherwise how any disposition that we might make of the order could materially affect the interests of the parties. It is a familiar rule of law that courts will not consume time and labor by attempting to decide moot questions, for which reason there will also be found at the end hereof an order dismissing the appeal from the order denying the motion to discharge the attachment.

Turning, therefore, to the appeal from the judgment, we discover that the court found that on February 5, 1931, the defendants owned a lease and option on certain mining property known as the "Twin Pines Placer lying about 400 feet above the Goodwin dam on the south bank of the Stanislaus river", in Tuolumne County; that on that day and immediately preceding it the defendants represented to plaintiff and his agents that the earth and gravel therein "contained values of pure gold running from $18.00 to $20.00 per ton"; that they had run a drift or incline through a large deposit of gravel on the property which yielded from $18 to $20 per ton; that plaintiff was denied time to prospect or mine within the property, and that defendants represented that they had "other parties standing ready and willing to purchase said lease or take a sublease thereon and pay $20,000 in cash for the same and if the plaintiff was to acquire the property he would have to take it immediately. It was also found by the court that defendants represented they had acquired from the owner of adjoining property the right to dump gravel taken from the mine upon his property; that they "had been taking from said property $100.00 per day or $3000.00 per month, and that such values had continued through thirty or forty feet of the workings; that they could not produce receipts for the values thus obtained from said property as they had shipped such values and disposed of the same through channels other than through the mint or bank as they did not want the people in the vicinity of said property or around Oakdale to know of the rich values being taken from said property". The findings also disclose that defendants represented that one of them, D. V. Cole, was an experienced mining man of twenty-two years' experience and that the

gravel channel was an ancient river channel, all of which representations induced the plaintiff to pay the $15,000 for a sublease of the property.

There then follow findings to the effect that all of the foregoing representations were false and known by the defendants to be false; that in truth, from all the work done by them on the property the defendants had not extracted in excess of $250; that instead of being in an ancient river channel, the small deposit of gravel was made ''by the modern river on a bench while in the process of cutting the present channel of the Stanislaus River''.

It would serve no useful purpose for us to set down here all of the testimony adduced by the plaintiff to support these findings. Suffice it to say that we have scrutinized it with care and each of the recited findings is amply supported. That the trial court might conceivably have adopted a different version of the affair from the testimony of the defendants is no reason why the reviewing tribunal should attempt to weigh the evidence. The conclusion of the lower court in such cases is, as has so frequently been said, final.

It was also found that plaintiff had offered to restore everything of value received by him under the contract, and in fact the findings disclose that he did. Under such circumstances and findings there was nothing left for the trial court to do except enter judgment for the plaintiff.

The evidence discloses that respondent succeeded in extracting $489.61 from the property during his operation thereof. Appellants contend that since the notice of rescission did not specifically tender this sum it was for that reason insufficient. There is no merit in the contention, for as developed by the findings the respondent had, as a direct result of the misrepresentations expended greatly in excess of the mentioned amount, and had allowed appellants credit therefor. Of course, it is elementary that in rescinding on the ground of fraud the injured party is not required to restore that which, in any event, he would be entitled to retain. (*Richards* v. *Fraser*, 122 Cal. 456 [56 Pac. 246], and cases there cited.)

Appellants also contend that on March 10, 1931, respondent was in default under the provisions of the lease, which required him to pay to them as lessors twenty-five per cent of all the gold recovered in any month on or before the

tenth of the succeeding month, which position was assumed by them in the trial court, pursuant to a notice dated March 17th, in which they asserted their election to declare a forfeiture of the lease for the identical reason. A complete answer to this argument is set forth in the findings, based upon substantial testimony, that plaintiff did not make a complete or general cleanup of gold until after March 1, 1931, and that no royalties or rental fell due on March 10, 1931.

Whether the giving of the last-mentioned notice by the appellants, followed by the notice of rescission of respondent, amounted to a mutual cancellation of the lease, as found by the court, could not alter the outcome of the cause—hence discussion thereof is not necessary.

As already indicated, the following disposition of the appeal should be made:

The appeal from the order denying motion for a new trial is dismissed.

The appeal from the order denying the motion to discharge attachment is dismissed, and the judgment is affirmed.

Shenk, J., Seawell, J., Waste, C. J., and Langdon, J., concurred.

Rehearing denied.